The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON CONTENT SERVICES LLC, a Delaware corporation, PENGUIN RANDOM HOUSE LLC, a Delaware corporation, LEE CHILD, SYLVIA DAY, JOHN GRISHAM, C.J. LYONS, DOUG PRESTON, JIM RASENBERGER, T.J. STILES, R.L. STINE, MONIQUE TRUONG, SCOTT TUROW, NICHOLAS WEINSTOCK, AND STUART WOODS, <br><br> Plaintiffs, <br><br> v. <br><br> KISS LIBRARY d/b/a KISSLY.NET, WTFFASTSPRING.BID, LIBLY.NET, and CHEAP-LIBRARY.COM, RODION VYNNYCHENKO, ARTEM BESSHAPOCHNY, and DOES 1-10, <br><br> Defendants. | NO. 2:20-cv-01048 MJP <br><br> PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS KISS LIBRARY, RODION VYNNYCHENKO, AND ARTEM BESSHAPOCHNY <br><br> NOTE ON MOTION CALENDAR: NOVEMBER 8, 2021 |

MOTION FOR DEFAULT JUDGMENT (No. 2:20-cv-01048-MJP)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  BACKGROUND ............................................................................................... 2

    A.   Plaintiffs' Claims. ................................................................................. 2

    B.   Defendants Intentionally Hide Their True Identities and Willfully Distribute Unauthorized Copies of Plaintiffs' Protected Works. ......................................... 3

    C.   Defendants Spoliate Evidence, Attempt to Evade Service, and Fail to Defend or Appear in this Case. ............................................................................ 3

III. ARGUMENT ..................................................................................................... 5

    A.   The Court Has Jurisdiction to Enter Default Judgment. ....................................... 5

        1.   Subject Matter Jurisdiction. ........................................................... 5

        2.   Personal Jurisdiction. ................................................................... 5

    B.   Plaintiffs Are Entitled to Default Judgment. ......................................... 9

        1.   First *Eitel* Factor:  Plaintiffs Will Be Prejudiced Without a Default Judgment. .............................................................................. 9

        2.   Second and Third *Eitel* Factors:  Plaintiffs' Well-Pled Complaint Establishes Defendants' Liability for Copyright Infringement. ............... 9

        3.   Fourth *Eitel* Factor:  Defendants' Egregious Conduct Warrants the Statutory Damages Sought by Plaintiffs. ............................................. 10

        4.   Fifth *Eitel* Factor:  Defendants' Willful Infringement Is Undisputed. ... 11

        5.   Sixth *Eitel* Factor:  Defendants' Failure to Appear Is Inexcusable. ....... 12

        6.   Seventh *Eitel* Factor:  Defendants' Knowing Failure to Defend Outweighs Preference for Decisions on the Merits. ............................... 12

    C.   Plaintiffs Are Entitled to Willful Statutory Damages. ........................................ 13

        1.   Defendants Willfully Infringed at Least Fifty-Two of Plaintiffs' Copyrighted Works. ................................................................... 13

        2.   Defendants' Extensive and Deliberate Abuse of Plaintiffs' Well-Known Works Warrants Maximum Statutory Damages. ................................... 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

      D.     Plaintiffs Are Entitled to Permanent Injunctive Relief ...................................... 20

            1.     Plaintiffs Suffered Irreparable Harm. .................................................... 20

            2.     Monetary Damages Alone Are Inadequate. ........................................... 21

            3.     The Balance of Equities Favors a Permanent Injunction. ...................... 22

            4.     The Public Interest Would Be Served by a Permanent Injunction. ........ 23

IV.    CONCLUSION ............................................................................................................ 23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
    534 F. App'x 633 (9th Cir. 2013)............................................................22

*Aries Music Entm't, Inc. v. Angelica's Record Distribs., Inc.*,
    506 F. App'x 550 (9th Cir. 2013)............................................................11

*Authentify Pat. Co. v. StrikeForce Techs., Inc.*,
    39 F. Supp. 3d 1135 (W.D. Wash. 2014) ................................................8

*Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*,
    157 F. Supp. 3d 929 (W.D. Wash. 2015) ..........................................6, 7, 8

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082, 1088 (9th Cir. 2000) ......................................................8

*Beck v. Pike*,
    2017 WL 530354 (W.D. Wash. 2017) ....................................................12

*BMW of N. Am. LLC v. K VIP Auto Body*,
    2018 WL 2452428 (N.D. Cal. 2018) .......................................................15

*Chan v. Soc'y Expeditions, Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ..................................................................6

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) .............................................................6, 7

*Corbis Corp. v. Integrity Wealth Mgmt., Inc.*,
    2009 WL 2486163 (W.D. Wash. 2009) ....................................................7

*CytoSport, Inc. v. Vital Pharms., Inc.*,
    617 F. Supp. 2d 1051 (E.D. Cal. 2009) ..................................................21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................5

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ................................................................14

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ....................................................10, 16, 22

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*,
    749 F. Supp. 2d 1038 (N.D. Cal. 2010) ......................................................10

*Dream Games of Ariz., Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) .......................................................................13

*eBay, Inc. v. Bidder's Edge*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ......................................................20

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .............................................................................20, 21

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) ............................................................ *passim*

*Entm't, Ltd. v. Allstar Vending, Inc.*,
    97 F. Supp. 3d 536 (S.D.N.Y. 2015) ...........................................................14

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
    344 U.S. 228 (1952) ..............................................................................13, 19

*Getty Images (U.S.), Inc. v. Virtual Clinics*,
    2014 WL 1116775 (W.D. Wash. 2014) ................................................ *passim*

*Getty Images (US), Inc. v. Virtual Clinics*,
    2014 WL 358412 (W.D. Wash. 2014) ..................................... 9, 10, 11, 12

*Hydentra HLP Int. Ltd. v. Sagan Ltd.*,
    783 F. App'x 663 (9th Cir. 2019) ..................................................................8

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .......................................................................................6

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009) .......................................................................23

*Jackson v. Sturkie*,
    255 F. Supp. 2d 1096 (N.D. Cal. 2003) ......................................................21

*Klauber Bros., Inc. v. Kylie Shop, Inc.*,
    2020 WL 8474583 (C.D. Cal. 2020) ...........................................................19

*L.A. News Serv. v. Reuters Television Int'l*,
    149 F.3d 987 (9th Cir. 1998) .......................................................................13

*LHF Prods., Inc. v. Holmes*,
    2018 WL 3742189 (W.D. Wash. 2018) ....................................................5, 12

MOTION FOR DEFAULT JUDGMENT (No. 2:20-cv-01048-MJP)
Page iv

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ...........................................................20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .............................................................6

*MGM Studios Inc. v. Grokster, Ltd.*,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003) ...............................................9

*Microsoft Corp. v. Mountain W. Computers, Inc.*,
    2015 WL 4479490 (W.D. Wash. 2015) ...............................................7

*Microsoft Corp. v. Nop*,
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) .............................................13

*NYC Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................17

*Peer Int'l Corp. v. Pausa Records, Inc.*,
    909 F.2d 1332 (9th Cir. 1990) .....................................................13, 19

*PepsiCo, Inc. v. Cal. Security Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) .......................................10, 12

*Philip Morris USA, Inc. v. Castworld Prods, Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) .......................................................19

*Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*,
    2019 WL 1572675 (W.D. Wash. 2019) ...............................................8

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .............................................................6

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) .............................................................8

*Shute v. Carnival Cruise Lines*,
    113 Wn.2d 763 (1989) .........................................................................6

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .............................................................20

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ...............................................................5

*To v. Nguyen*,
    2008 WL 11340345 (C.D. Cal. 2008) ...............................................19

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Tu v. TAD Sys. Tech. Inc.*,
   2009 WL 2905780 (E.D.N.Y. 2009) ..................................................................23

*In re Tuli*,
   172 F.3d 707 (9th Cir. 1999) ...........................................................................5

*Ty, Inc. v. GMA Accessories, Inc.*,
   132 F.3d 1167 (7th Cir. 1997) .......................................................................21

*UN4 Prods., Inc. v. Primozich*,
   372 F. Supp. 3d 1129 (W.D. Wash. 2019) ....................................................10

*Unicolors, Inc. v. Joy 153, Inc.*,
   2016 WL 3462128 (C.D. Cal. 2016) ..............................................................19

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) .........................................................................14

*Universal Music MGB NA LLC v. Quantum Music Works, Inc.*,
   769 F. App'x 445 (9th Cir. 2019) ....................................................................7

*Warner Bros. Home Entm't Inc. v. Jimenez*,
   2013 WL 3397672 (C.D. Cal. 2013) ..............................................................21

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) .........................................................23

*Wilson v. Moore & Assocs., Inc.*,
   564 F.2d 366 (9th Cir. 1977) ...........................................................................4

*Windsurfing Int'l Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986) .......................................................................22

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ...............................17

**Statutes**

17 U.S.C. § 106 ..................................................................................................10

17 U.S.C. § 501 ....................................................................................................5

17 U.S.C. § 502(a) ..........................................................................................2, 20

17 U.S.C. § 504(c)(2) ..............................................................................2, 11, 13

17 U.S.C. § 504(c)(3)(A) ..............................................................................14, 15

28 U.S.C. § 1331 ..................................................................................................5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

28 U.S.C. § 1338(a) ........................................................................................5

RCW 4.28.185 ................................................................................................6

**Regulations**

General Data Protection Regulation, art. 17 ...................................................4

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ...............................................................................5

Fed. R. Civ. P. 4(k)(2) .................................................................................8, 9

Fed. R. Civ. P. 55 .............................................................................2, 4, 5, 23

Local Civ. R. 7(b)(2) ....................................................................................13

Local Civil Rule 55 ..........................................................................2, 5, 23

**Constitutional Provisions**

U.S. Const., Due Process Clause ...................................................................6

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

For at least the past five years, Defendants Kiss Library, Rodion Vynnychenko, and Artem Besshapochny ("Defendants")[1] operated and profited from an illicit, international piracy ring that willfully infringed the rights of Publishers Amazon Content Services LLC and Penguin Random House LLC, and Authors Lee Child, Sylvia Day, John Grisham, C.J. Lyons, Doug Preston, Jim Rasenberger, T.J. Stiles, R.L. Stine, Monique Truong, Scott Turow, Nicholas Weinstock, and Stuart Woods (collectively, "Plaintiffs"). Through a network of evolving mirror websites, fake aliases, false contact information, and evasive tactics, Defendants illegally distributed a plethora of Plaintiffs' literary copyrighted works. Defendants' conduct inflicted both monetary and non-monetary harm on Plaintiffs, such as lost sales, lost customers, harm to reputation and goodwill, disruption of publishing and distribution networks, and interference with existing and prospective business relationships. Plaintiffs were forced to bring this lawsuit to stop that ongoing, irreparable harm and hold Defendants responsible for their blatant piracy.

After Plaintiffs filed this lawsuit, Defendants—located in and operating from Ukraine—doubled down on their efforts to evade accountability for their piracy. For example, rather than filing an answer or appearing before the Court, Defendants turned to spoliation, quickly submitting data deletion requests to the payment processors and email providers that they used to operate their piracy scheme. Further, Defendant Vynnychenko deregistered the fake address he used to register Kisslibrary.com and registered a different (also fake) address, forcing Plaintiffs to engage a local investigator to uncover his true address to serve him under the Hague Convention and local Ukrainian law. Even after being properly served, Defendants refused to participate or file an appearance in this action. Because Defendants intentionally failed to answer for their misconduct, the Clerk entered an Order of Default against them on September 13, 2021. *See* Dkt. 35.

---

[1] Plaintiffs dismissed defendant Jack Brown without prejudice on October 8, 2021, *see* Dkt. 37, and are not moving for default judgment against him.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55(b)(2), Plaintiffs now move for default judgment against Defendants. As outlined below, the Court should enter an award of $7.8 million in statutory damages under 17 U.S.C. § 504(c)(2) and a permanent injunction under § 502(a) against Defendants. Defendants' egregious, unrepentant, and willful copyright infringement of Plaintiffs' best-selling literary works has been admitted by their default and shown through substantial evidence. Plaintiffs therefore respectfully request the Court grant their motion and enter the accompanying proposed Money Judgment and Permanent Injunction.

## II.     BACKGROUND

### A.     Plaintiffs' Claims.

On July 7, 2020, Plaintiffs filed their Complaint against Defendants Kiss Library, Vynnychenko, and Besshapochny (as well as unnamed Doe Defendants and Jack Brown) for copyright infringement. Dkt. 1 ("Compl."). As detailed in the Complaint and concurrently filed motion for temporary injunctive relief, *see* Dkt. 2, Plaintiffs are a diverse group of authors and publishers with exclusive rights in a wide variety of successful works. *See* Compl. ¶¶ 2-4, 32-34. Beginning around 2017, Defendants "engage[d] in the rampant, illegal copying, display, and distribution of copyright-protected ebooks for their direct financial benefit, including works written by the Authors and exclusively published or distributed by the Publishers." *Id.* ¶ 40. In an effort to increase traffic while evading detection, Defendants operated a cascading network of mirror websites, with domains like kisslibrary.com, kisslibrary.net, kissly.net, libly.net, cheap-library.com, and wtffastspring.bid. *See id.* ¶¶ 35-36. Plaintiffs own exclusive copyrights in at least fifty-two works that Defendants illegally distributed on their ring of pirate sites, reaping illicit proceeds from unauthorized sales. *See id.* ¶¶ 41-42; Declaration of John Goldmark ("Goldmark Decl.") ¶¶ 2-4 & Ex. A. As a result of Defendants' infringement, Plaintiffs suffered significant economic losses and non-economic harms in the form of lost customers, goodwill and reputation, investigative resources, and disruption to distribution licenses. Compl. ¶¶ 50-52; *see also* Dkt. 3 ¶ 6.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

### B. Defendants Intentionally Hide Their True Identities and Willfully Distribute Unauthorized Copies of Plaintiffs' Protected Works.

From the outset, Plaintiffs have presented substantial evidence showing that Defendants intentionally hid their true identities, knowingly ignored Plaintiffs' rights, and obfuscated their illicit activities. Compl. ¶¶ 36, 38, 46-49; *see also* Dkt. 2 at 8; Dkt. 4 ¶¶ 3-5, 7-9, 17-18. Using a web of fake names, addresses, and contact information, *see* Compl. ¶ 38, as well as ever-changing and evolving domains, Defendants sought to avoid detection and accountability for their illegal distribution of Plaintiffs' (as well as many others') works, *see id.* ¶ 36. Based on the evidence Plaintiffs presented, the Court issued an immediate Temporary Restraining Order ("TRO") against Defendants and all their websites, authorized expedited discovery, and approved alternate service of process on Kiss Library through its "contact us" email address. *See* Dkt. 10 at 5-8. After notice and opportunity to be heard, which Defendants chose not to attend, Dkts. 13-14, the Court converted its TRO into a Preliminary Injunction. Dkt. 15.

As uncovered during Court-authorized third-party discovery, Defendants' scheme and misconduct involved an even wider web of piracy sites. In addition to the Kiss Library-related websites, the email accounts associated with Defendants Vynnychenko and Besshapochny also operated other ebook piracy websites such as booksgreatchoice.com, osebooks.com, quabook.com, bookpdfs.com, and luckybooks.online—which likewise employed methods to obscure their identities and connection to Defendants. *See* Goldmark Decl. ¶¶ 11-12 & Exs. K-L. As with the other Kiss Library website registrations, Defendants used fake aliases to register these websites with generic email addresses. *See id.* ¶ 7 & Ex. B. These websites, which have now been taken down as a result of the Court's preliminary injunction, *see* Dkt. 12 ¶ 6, further reveal the expansive, concerted, and deliberate nature of Defendants' illicit scheme.

### C. Defendants Spoliate Evidence, Attempt to Evade Service, and Fail to Defend or Appear in this Case.

Almost immediately after Plaintiffs filed suit, Defendants tried to erase evidence of their misconduct and cover their tracks. First, invoking the "right to be forgotten" under the European Union's General Data Protection Regulation, Defendants attempted to have

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

incriminating records purged from third-party service providers, including financial records from payment processors and subscriber information from email providers. *See* Goldmark Decl. ¶¶ 8-9 & Exs. D (citing Article 17 General Data Protection Regulation), E-H. These efforts were partially successful, resulting in the deletion of relevant information and documents from some vendors' records. *See id.* ¶ 10 & Exs. I-J.

Next, among other attempts to evade service, Defendant Vynnychenko deregistered the address he used to register kisslibrary.com and registered a different (also false) address with the Ukrainian government. *See* Dkt. 25 at 2-3; Dkt. 28 at 1-3; Dkt. 26 ¶ 8. Ultimately, after hiring private investigators in Ukraine, Plaintiffs confirmed that both prior addresses provided by Vynnychenko were inaccurate (finding no evidence he ever resided at either address), and finally uncovered his true address. *See* Dkt. 28 at 2; Dkt. 29 ¶¶ 4-6. Again forcing Plaintiffs to incur more costs, Vynnychenko twice refused to accept service from Ukrainian government officials at his actual address, and then failed to participate in the confirmation of service proceedings required under Ukrainian law. Dkt. 32 ¶ 4. Despite Defendants' refusals of service and other attempts to avoid facing the consequences of their misconduct,[2] Plaintiffs effected and confirmed proper service on all Defendants. *See* Dkt. 31 at 2.

Defendants failed to respond to the Complaint, file a notice of appearance, or otherwise defend against Plaintiffs' claims. Based on those failures, Plaintiffs moved for default. *See* Dkt. 34. On September 13, 2021, the Clerk granted Plaintiff's motion and entered an Order of Default against Defendants. Dkt. 35. As such, Defendants have admitted all the factual allegations set forth in the Complaint, as well as the other evidence submitted by Plaintiffs.

---

[2] Although Defendant Besshapochny sent a letter to the Court, "object[ing]" to being a part of these proceedings, *see* Dkt. 19, this informal contact—with its disavowal of an intent to defend—was insufficient to constitute an appearance requiring notice under Rule 55(b). *See Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369-70 (9th Cir. 1977) (affirming default judgment and holding that a defendant's letter partially responding to a plaintiff's complaint did not constitute an appearance); *see also* Dkt. 22 at 3-4. Further, Plaintiffs also provided clear notice of their intent to move for default with their status report to the Court, *see* Dkt. 31 at 2, yet Defendant Besshapochny has still failed to appear or otherwise defend his actions.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

# III.    ARGUMENT

The Court has the authority to enter a default judgment based on the Order of Default, Plaintiffs' Complaint, and the competent evidence submitted in support of this motion.  *See* Fed. R. Civ. P. 55; LCR 55.  When considering a request for default judgment, "courts must accept the well-pleaded allegations of a complaint … as established fact."  *LHF Prods., Inc. v. Holmes*, 2018 WL 3742189, at *2 (W.D. Wash. 2018) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

As set forth below, the Court should grant Plaintiffs' motion for default judgment against Defendants because (A) the Court has subject matter and personal jurisdiction, (B) Plaintiffs are entitled to default judgment under the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), and (C) a judgment for significant statutory damages and permanent injunction is both justified and reasonable given Defendants' willful, widespread, and egregious abuse of Plaintiffs' valuable intellectual property rights.

## A.    The Court Has Jurisdiction to Enter Default Judgment.

Before entering default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over Defendants.

### 1.    Subject Matter Jurisdiction.

The Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under 17 U.S.C. § 501, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### 2.    Personal Jurisdiction.

The Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with Washington and Plaintiffs' claims relate to those contacts.  Where, as here, there is no applicable federal statute governing personal jurisdiction, courts look to the forum state's law.  *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).  Washington's long-arm statute extends personal jurisdiction to the broadest

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

reach that the Due Process Clause of the federal Constitution permits. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994) (citing *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763 (1989)); RCW 4.28.185. Federal due process requires that defendants "'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Under the Ninth Circuit's three-part test, a nonresident defendant has sufficient contacts when: (1) the defendant "purposefully direct[s] his activities" at the forum; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction is "reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (citation & internal quotation marks omitted); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-32 (9th Cir. 2011) (personal jurisdiction affirmed over owner of out-of-state website illegally distributing copyrighted material). All three elements are satisfied here.

*First*, Defendants purposefully directed their piracy scheme at Washington and its residents. The purposeful direction prong is satisfied where, as here, defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *CollegeSource*, 653 F.3d at 1077 (citation & internal quotation marks omitted). Defendants targeted Washington by intentionally pirating works that they knew were exclusively published and distributed by Plaintiff Amazon Content Services LLC ("Amazon"), which has its principal place of business in Seattle. Compl. ¶¶ 9, 29, 46 ("[O]n the listing for each Work, Defendants include the name of the publisher that published that version of the title."); *see Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, 157 F. Supp. 3d 929, 936 (W.D. Wash. 2015) (finding an "intentional act" and "express aiming" where defendant chose the "Swiss Perc" mark knowing it was infringing the rights of a Washington resident); *CollegeSource*, 653 F.3d at 1079 ("[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."). By unlawfully distributing these works, Defendants harmed Plaintiff Amazon in Washington by

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

interfering with the exclusive publishing and distribution relationships and agreements that it formed with the relevant authors from here. *See Universal Music MGB NA LLC v. Quantum Music Works, Inc.*, 769 F. App'x 445, 446 (9th Cir. 2019) (personal jurisdiction over foreign copyright infringer because it "knew that harm was likely to be suffered in the United States because it purported to license the use of a work whose copyright was registered to Universal, a California company"); *see also Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, 2009 WL 2486163, at *2 (W.D. Wash. 2009) ("Plaintiff has satisfied the effects-purposeful direction test by making a prima facie showing that Defendant willfully infringed copyrights owned by Plaintiff and alleging that Defendant knew Plaintiff's headquarters was in Washington.") (citation omitted).

Further, Defendants intentionally advertised and distributed all Plaintiffs' works on websites accessible to Washington consumers, duping this State's residents into believing that they were paying for legitimate copies of the works rather than the unauthorized and substandard reproductions Defendants distributed. *See* Compl. ¶¶ 50, 52. This unlawful distribution also interfered with all Plaintiffs' licensing relationships with a Washington company, and diverted sales from Washington-based Amazon.com. *Id*. ¶ 29; *cf. CollegeSource*, 653 F.3d at 1077 ("[T]he 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum.") (citation omitted); *Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, 157 F. Supp. 3d 929, 936 (W.D. Wash. 2015) ("[A]n attempt to compete over the internet with a plaintiff in the plaintiff's home state is purposeful direction at that state."); *Microsoft Corp. v. Mountain W. Computers, Inc.*, 2015 WL 4479490, at *7 (W.D. Wash. 2015) ("Here, the alleged actions were aimed at a Washington business. If the allegations are true, it was not only foreseeable but certain that [Defendants'] conduct would harm Plaintiff in Washington.").

**Second**, Plaintiffs' copyright infringement claims arise from and relate to Defendants' "forum-related activities." *Aweida*, 157 F. Supp. 3d at 937-38. As this District has held, the

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

"arising from" prong is satisfied where, as here, the defendant's "knowing infringement was Washington-related, even if it did not occur entirely (or even primarily) in Washington." *Id*. As set forth above, Defendants engaged in "knowing and intentional infringement of a Washington corporation's [works] for the purpose of competing with that company in Washington," "via [defendants'] website." *Id*.; *see Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002) (intellectual property claim arose from defendant's forum-related activities because defendant's activities injured plaintiff in forum state, where plaintiff has its principal place of business).

**Third**, Defendants cannot meet their burden of "establishing a 'compelling' case that the court's exercise of personal jurisdiction would be unreasonable." *Aweida*, 157 F. Supp. 3d at 938; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (Supreme Court precedent "explicitly places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a 'compelling case'") (citation omitted). By failing to respond to the Complaint, Defendants have inherently failed that burden and conceded that the Court's exercise of jurisdiction in this case would be reasonable. *See Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, 2019 WL 1572675, at *5 (W.D. Wash. 2019) (holding exercise of jurisdiction was reasonable because defaulting defendants failed to present any evidence or contest court's jurisdiction). Further, even if Defendants appeared to take accountability for their piracy, they could not make a compelling case to avoid jurisdiction because (1) "Washington has a plain interest in protecting the intellectual property rights of its residents," *Aweida Arts*, 157 F. Supp. 3d at 938, and (2) "Washington has a substantial interest in protecting its residents from the sale of allegedly infringing [products]," *Authentify Pat. Co. v. StrikeForce Techs., Inc.*, 39 F. Supp. 3d 1135, 1148 (W.D. Wash. 2014).

Accordingly, this Court has personal jurisdiction over Defendants.[3]

---

[3] If the Court were to find personal jurisdiction over Defendants in Washington lacking, then Defendants would not be subject to "jurisdiction in any state's courts of general jurisdiction," and the Court would have jurisdiction over Defendants under Rule 4(k)(2). *See Hydentra HLP Int. Ltd. v. Sagan Ltd.*, 783 F. App'x 663, 664-65 (9th Cir. 2019); *MGM Studios Inc. v.*

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

**B.    Plaintiffs Are Entitled to Default Judgment.**

To determine a plaintiff's entitlement to default judgment, courts in the Ninth Circuit consider the seven factors set forth in *Eitel*: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1471-72. These seven factors strongly weigh in favor of default judgment here.

**1.    First *Eitel* Factor:  Plaintiffs Will Be Prejudiced Without a Default Judgment.**

The first factor favors Plaintiffs because they will be prejudiced without a default judgment in this case.  Defendants have made clear through their conduct that they have no intention of participating in this litigation.  Absent default judgment, Plaintiffs have no legal remedy for Defendants' misconduct and infliction of substantial harms, and no way to prevent Defendants from causing further harm to Plaintiffs.  *See Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412, at *3 (W.D. Wash. 2014) ("*Getty Images I*") ("If default judgment is not entered in this case, Getty would have to wait for relief until the [defendants] decide to participate in the litigation.  It is not clear when or if they plan to do so.  The first factor therefore supports default judgment.").

**2.    Second and Third *Eitel* Factors:  Plaintiffs' Well-Pled Complaint Establishes Defendants' Liability for Copyright Infringement.**

The second and third factors of merits and pleading sufficiency—"frequently analyzed together"—also both support a default judgment.  *Id.*  "To establish direct copyright infringement, [Plaintiffs] must (1) 'show ownership of the allegedly infringed material' and (2) 'demonstrate that the alleged infringers violate at least one exclusive right granted to

---

*Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1095 (C.D. Cal. 2003) ("[E]ven if Sharman could not reasonably anticipate being haled into a court in this *state,* it certainly could reasonably anticipate being haled into a court in this *country.*  Thus, jurisdiction could be exercised constitutionally in this Court pursuant to Rule 4(k)(2) even if it could not be so exercised by California state courts.").

copyright holders under 17 U.S.C. § 106.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted). Plaintiffs have established both elements.

**First**, as alleged in the Complaint (and admitted by Defendants' default), Plaintiffs own exclusive copyrights in protected literary works offered for sale and distributed on Defendants' websites. Compl. ¶¶ 11-22, 32, 40-42, 54. In addition, Plaintiffs included the registration numbers for seventeen works in the Complaint, *see id.* ¶ 41, and for an additional thirty-five works distributed on Defendants' sites in the accompanying declaration, *see* Goldmark Decl. ¶ 3(i)-(xxxv) & Ex. A. These uncontested allegations and proofs of registration conclusively establish Plaintiffs' ownership rights in the infringed works. *See, e.g.*, *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019); *Getty Images I*, 2014 WL 358412, at *4; *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1049 n.2 (N.D. Cal. 2010) (granting default judgment, even without further evidence of copyright registration).

**Second**, as alleged in the Complaint (and also admitted by the default), Defendants willfully copied, displayed, and distributed Plaintiffs' protected works without license, in blatant violation of Plaintiffs' exclusive copyrights under 17 U.S.C. § 106. Compl. ¶¶ 8, 40, 56. In addition to the allegations in the Complaint, Plaintiffs also have provided other evidence confirming the unauthorized distribution of their works on Defendants sites. *See* Dkt. 3 ¶¶ 3-4; Compl. Ex. D (Defendants' unauthorized listings); Goldmark Decl. ¶¶ 2-4 & Ex. A. These uncontested allegations and supporting evidence establish Defendants' infringement and their liability for direct copyright infringement. *See Primozich*, 372 F. Supp. 3d at 1133.

        **3.**     **Fourth *Eitel* Factor: Defendants' Egregious Conduct Warrants the Statutory Damages Sought by Plaintiffs.**

Under the fourth factor, courts consider "the sum of money at stake in the action," *Eitel*, 782 F.2d at 1471, generally "in relation to the seriousness of the conduct," *see PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). This factor favors a default judgment because the damages Plaintiffs seek are expressly authorized by the Copyright Act and reasonable given Defendants' flagrant, repeated, and widespread exploitation of Plaintiffs'

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

valuable literary works.  Plaintiffs seek the statutory maximum of $150,000 in damages for each of the fifty-two infringed works, totaling $7.8 million.  *See* 17 U.S.C. § 504(c)(2).  As set forth more fully below in Section III.C, Defendants engaged in an intentional scheme to pirate and distribute valuable copyrighted works over the course of at least five years, while trying to hide their identities, avoid answering for their misconduct, and otherwise seeking to evade justice.  Based on their willful infringement and intentional evasion, the Court should find that the seriousness of Defendants' piracy scheme warrants the statutory damages requested and favors default judgment.  *See, e.g.*, *Aries Music Entm't, Inc. v. Angelica's Record Distribs., Inc.*, 506 F. App'x 550, 552 (9th Cir. 2013) (affirming default judgment awarding $150,000/work in statutory damages against defendants for copyright infringement on the basis that plaintiff pled continuing willful infringement of its copyrights).

### 4.     Fifth *Eitel* Factor:  Defendants' Willful Infringement Is Undisputed.

The fifth factor favors a default judgment because default has been entered and Defendants have thereby admitted the scope and extent of their illicit scheme.  "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Getty Images I*, 2014 WL 358412, at *4.  In addition, there is no dispute that Defendants distributed the infringing works, as their unauthorized listings were publicly available throughout their ring of pirate sites.  Further, Plaintiffs corroborated their allegations (now deemed admitted) with evidence showing Defendants' illicit conduct, including examples of Defendants' unauthorized distribution of Plaintiffs' works, use of fake contact information and aliases on their ring of pirate sites in an effort avoid accountability for their scheme, and post-suit efforts to both avoid service and spoliate evidence.  *See* Compl. Exs. A-D; Goldmark Decl. ¶¶ 2-13 & Exs. A-L. Therefore, this factor also weighs heavily in favor of Plaintiffs' request.  *See Getty Images I*, 2014 WL 358412, at *4 ("Where a plaintiff 'has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.'") (citation omitted).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## 5. Sixth *Eitel* Factor: Defendants' Failure to Appear Is Inexcusable.

The sixth factor weighs in favor of default judgment because Defendants are well aware of this litigation and Plaintiffs' intention to seek default judgment. "In the default judgment context, there is no excusable neglect where a defendant is properly served with the Complaint, the notice of entry of default, and the papers in support of the default judgment motion." *Getty Images I*, 2014 WL 358412, at *5 (citation & internal quotation marks omitted); *see also Beck v. Pike*, 2017 WL 530354, at *2 (W.D. Wash. 2017) (sixth factor "nearly always favors entry of default judgment"). Plaintiffs properly served Defendants with the Complaint in accordance with the Court's Order, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, and Ukrainian law. *See* Dkt. 34 at 2-3. As the Court found, Defendants also "received notice of the hearing time, date, and call in numbers" and yet "did not appear at the hearing or file any response to Plaintiffs' papers or the Court's Order." Dkt. 15 at 3. And even more recently, Defendants received notice of Plaintiffs' intent to move for default, *see* Dkt. 31 at 2, and Plaintiffs sent copies of the entry of default to Defendants' known email and physical addresses, *see* Goldmark Decl. ¶ 15. There is no evidence of excusable neglect or failure to receive notice of these proceedings.

## 6. Seventh *Eitel* Factor: Defendants' Knowing Failure to Defend Outweighs Preference for Decisions on the Merits.

The seventh factor weighs in favor of default judgment because Defendants have prevented Plaintiffs from obtaining a judgment on the merits. Where, as here, Defendants' failure to appear makes a decision on the merits "impractical, if not impossible," any preference for deciding cases on the merits "does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation & internal quotation marks omitted). By choosing not to respond to Plaintiffs' Motion for Default, Defendants have also conceded that Plaintiffs' claims have merit. *See LHF Prods.*, 2018 WL 3742189, at *2 ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.") (quoting Local Civ. R. 7(b)(2)).

For the reasons above, all seven *Eitel* factors support default judgment here.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

## C.    Plaintiffs Are Entitled to Willful Statutory Damages.

The Copyright Act expressly authorizes statutory damages of up to $150,000 for each work willfully infringed.  17 U.S.C. § 504(c)(2).  "Statutory damages … help 'sanction and vindicate the statutory policy of discouraging infringement.'"  *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (quoting *L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998)); *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy.").  "[A] plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.'"  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) (citation omitted).  In default judgment cases like this one, statutory damages are particularly appropriate "because the information needed to prove actual damages is within the infringers' control and is not disclosed."  *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (citation & internal quotation marks omitted).

The Court should award $150,000 for each of the fifty-two copyrighted works that Defendants willfully infringed, for a total award of $7.8 million, because Defendants' widespread, egregious, and willful piracy scheme warrants maximum statutory damages.

### 1.    Defendants Willfully Infringed at Least Fifty-Two of Plaintiffs' Copyrighted Works.

Defendants willfully infringed at least fifty-two of Plaintiffs' works.  "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (citation & internal quotation marks omitted).  Importantly, however, "it shall be a rebuttable presumption that the infringement was committed willfully … if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

a domain name registrar, domain name registry, or other domain name registration authority[.]" 17 U.S.C. § 504(c)(3)(A). In the context of default judgment, "all factual allegations in the complaint are deemed true, including the allegation of [defendant]'s willful infringement[.]" *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *see* Rovio *Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default.").

Here, as alleged in Plaintiffs' Complaint, and now deemed admitted by Defendants' default, Defendants knew the works were copyrighted and required a license from the rightsholder to be copied, displayed, and distributed, but Defendants exercised those rights without authorization anyway. Compl. ¶¶ 44, 46. In fact, the listing for each work on Defendants' websites included the name of the work's publisher and a sample from the work that included the rights page identifying when and by whom each work was copyrighted— information that Defendants then intentionally ignored in order to advance their piracy scheme. *Id*. ¶ 46. Further, Defendants purposefully disguised their illicit operation to potential customers and visitors by (1) dishonestly claiming to partner with authors and publishers in distributing their works, *id.* ¶ 45, (2) falsely purporting to have a Digital Millennium Copyright Act-compliant copyright agent, *id.* ¶ 47, (3) promising to respond to customer inquiries ("Don't worry - no message is left unanswered") and conspicuously posting contact information, which proved to be fake (e.g., phone numbers that were never answered during business hours and physical addresses for which no commercial or retail spaces existed), *id.* ¶¶ 36- 38, and (4) as noted above, listing the rightful Plaintiff in a work's "information" section to lend credibility to their offerings, *id.* ¶ 46. Each of these acts of misconduct, standing alone, reflects Defendants' willful intent. And together, they reveal a coordinated, deceptive, and widespread scheme to abuse and infringe Plaintiffs' rights.

Moreover, Defendants' intentional infringement and attempts to avoid detection are also supported by other relevant evidence. Defendants repeatedly registered the scheme's website domains using false aliases and fake contact information. Goldmark Decl. ¶¶ 5-7 & Exs. B-C.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

This alone gives rise to a rebuttable presumption of willful infringement, which Defendants have not rebutted. *See* § 504(c)(3)(A); *BMW of N. Am. LLC v. K VIP Auto Body*, 2018 WL 2452428, at *7-8 (N.D. Cal. 2018) (considering Defendants' efforts to shield their activities as evidence of willfulness). Then, when confronted by this suit, Defendants proceeded to spoliate evidence, Goldmark Decl. ¶¶ 8-10 & Exs. D-J, evade service abroad by registering a new false address, *see* Dkt. 31, and continued to operate their scheme through additional infringing websites Plaintiffs uncovered in nonparty discovery, Goldmark Decl. ¶¶ 11-13 & Exs. K-L. On all accounts, these actions reveal Defendants as truly unrepentant copyright pirates, willfully profiting off of others' hard work, including during the COVID-19 shutdown when authors relied on ebook revenues the most. *See* Compl. ¶ 51.

> **2. Defendants' Extensive and Deliberate Abuse of Plaintiffs' Well-Known Works Warrants Maximum Statutory Damages.**

Plaintiffs' request for maximum statutory damages award, totaling $7.8 million, is justified given the demand for the works infringed, the flagrance of the infringement, as well as the need to deter such severe misconduct and preserve protections for literary works in a digital age. Although there is no set criteria for determining the amount of statutory damages, courts in this district consider four factors: (1) the infringers' profits and the expenses saved because of the infringement; (2) the plaintiff's lost revenues; (3) the strong public interest in ensuring the integrity of copyright laws; and (4) whether the infringer acted willfully. *Getty Images (U.S.), Inc. v. Virtual Clinics*, 2014 WL 1116775, at *2 (W.D. Wash. 2014) ("*Getty Images II*"). Defendants' widespread and egregious piracy scheme supports maximum statutory damages here.

The first two factors, which are "generally given less weight than the others because of the inherent uncertainty in calculating an infringer's profits and a plaintiff's lost revenue," nevertheless support heightened damages for several reasons. *Id.* at *2 (quoting *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1296 (D.R.I. 1982) ("[M]ost courts that have pondered the issue do not attach great weight to profits gained or to income lost, because these amounts are

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

difficult to monetize, and may be marginal at best.")).  For starters, Defendants' unlawful
conduct resulted in a windfall of pure, unlawful profit, whereby they distributed Plaintiffs'
best-selling works for approximately $6 per copy and paid nothing to acquire rights to the
works.  *See* Compl. Ex. D.  Further, across multiple mirror sites, Defendants claimed to have
"unbeatable prices," Compl. ¶ 37, designed to divert as many customers as possible from
legitimate sources to their websites to maximize their customer base and illegal sales.  *See* Dkt.
3 ¶ 6.  Moreover, the works at issue are some of the most popular titles ever published and
many have been available for several years, allowing Defendants plenty of runway to capture
profits from that consumer demand.  *See, e.g.*, https://www.jgrisham.com/Books/the-litigators/
(*The Litigators* is a "#1 *NEW YORK TIMES* BESTSELLER");
https://www.jgrisham.com/Books/sycamore-row/ (*Sycamore Row* is a "#1 *NEW YORK TIMES*
BESTSELLER"); https://www.annakang.com/books-2 (*You are (Not) Small* is NPR Best
Books 2014, Winner of the 2015 Theodor Seuss Geisel Award);
https://www.grandcentralpublishing.com/titles/scott-turow/the-burden-of-
proof/9780446677127/ (*The Burden of Proof* is a #1 *New York Times* Bestseller and also
"topped international bestseller lists"); https://www.theresaragan.com/about (T.R. Ragan is
*New York Times*, *USA Today*, and *Wall Street Journal* bestselling author).  Thus, while
Plaintiffs' losses are hard to quantify because the necessary sales information is within
Defendants' control, Defendants' pure, illicit profits on high-traffic titles over the course of
multiple years and multiple websites favor maximum statutory damages.

       Under the third factor, the public maintains a strong interest in deterring the kind of
widespread infringement perpetrated by Defendants, perhaps the "[b]iggest pirate book site
[the] world has ever seen."  *See* Compl. ¶ 7.  As the Ninth Circuit notes, "'the public has a
compelling interest in protecting copyright owners' marketable rights to their work and the
economic incentive to continue creating [creative content].'"  *Disney*, 869 F.3d at 867 (quoting
*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012)).  More directly, the public has an
interest in not being deceived into purchasing unauthorized, inferior copies of digital literary

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

works.  *See generally NYC Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).  As such, "[a]n award of the statutory maximum protects not only the copyrighted materials at issue, but also the entire entrepreneurial system upon which a copyright holder relies."  *Getty Images II*, 2014 WL 1116775, at *3 (citation & internal quotation marks omitted).

In *Getty Images II*, for example, this District awarded maximum statutory damages where plaintiff "alleged that the [defaulting defendants] continued to use [stock dog and cat] images after they became aware of their infringement."  *Id.* at *1-3.  Noting that "courts often evaluate the public's interest in ensuring the integrity of copyright laws by looking at the severity of the infringers' conduct[,]" *id.* at *3 ("If the infringing conduct is severe, … the higher award will deter such conduct in the future."), the court found the conduct was severe because defendants "gained commercial advantage by using Getty's copyrighted works on their websites, engaged in deception by using fictitious names, and failed to participate beyond limited discovery early in the case," *id.* at *4.  As such, a maximum award was necessary to alert "copyright infringers that they may not sneer in the face of copyright laws without facing consequences."  *Id.* (citation & internal quotation marks omitted).

Maximum statutory damages serve the public interest even more here.  In addition to Defendants' deceptive tactics and complete failure to participate in the case, their extensive and unauthorized distribution of Plaintiffs' works stole hard-earned income from authors who did not receive any royalties or proceeds from the sales on Defendants' sites.  Compl. ¶ 50. Instead, authors were forced to expend resources to discover and fight against Defendants' infringement.  *Id.* ¶¶ 47-50 (tweets from authors regarding sending notices to Kissly and Kiss Library); https://accrispin.blogspot.com/2019/08/kiss-library-pirate-site-alert.html.  This was particularly painful and detrimental for authors during the COVID-19 pandemic when brick and mortar bookstores closed, making authors and publishers more reliant on revenue from ebook sales.  *Id.* ¶ 51.  Further, Defendants duped customers into thinking they were receiving legitimate copies of the works, and therefore supporting their favorite authors with their

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

purchases. Under these circumstances, maximum statutory damages would signal the public's value for Plaintiffs' works, while also reassuring Plaintiffs and other authors that their works—which are essential for an enlightened society—are protected and worth their investment of time, effort, and talent.

The fourth factor—the severity of Defendants' willfulness—is "typically given the most weight by courts in determining an appropriate amount of statutory damages." *Getty Images II*, 2014 WL 1116775, at *4. This weighty factor strongly supports maximum statutory damages.

Defendants operated a sophisticated, international cybercrime operation, intentionally and repeatedly violating and reaping profits from Plaintiffs' literary works, as well as the protected works of many other authors and publishers. *See* Compl. ¶¶ 5-6, 41-49. Defendants purposefully operated in the shadows, using numerous names, financial accounts, and addresses around the world, including in Ukraine, Poland, Lithuania, Russia, and Canada, all designed to hide and cover-up their piracy. *See* Goldmark Decl. ¶¶ 5-7, 11-13; Compl. ¶ 38 (detailing fake contact information and coordinated ring of mirror pirate websites). Defendants' unlawful conduct harmed consumers by proliferating substandard quality reproductions of Plaintiffs' works, which in turn, harmed the Plaintiffs' goodwill, brand, and reputation. *See* Dkt. 3 ¶ 6(b)-(e); Compl. ¶ 50. Further, despite outcry by authors about Defendants' blatant infringement, Defendants did not stop their abuse of intellectual property rights—they instead migrated their infringing listings to other mirror website they operated. *See* Compl. ¶¶ 35-36, 48-50. Then, after Plaintiffs sued, Defendants further sought to hide and shirk responsibility. Defendants attempted to avoid service abroad, with Vynnychenko going so far as to register a new fake address in Ukraine, *see* Dkt. 28, while also actively spoliating evidence by asking third-party service providers (including their payment processor and website service provider) to delete their information, *see* Goldmark Decl. ¶¶ 8-10. Defendants also refused to stop their infringement after receiving notice of this suit, and instead continued to operate additional infringing websites that Plaintiffs uncovered in nonparty discovery. *See id.* ¶¶ 11-13.

This is precisely the sort of egregious willfulness and deception that warrants maximum

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

statutory damages, as the Ninth Circuit and district courts in this circuit have found.  For

example, in *Peer*, the Ninth Circuit affirmed the maximum willful statutory award for each of

plaintiff's eighty infringed literary works (then $50,000/work infringed), totaling $4 million.

909 F.2d at 1336-37.  Finding that defendant's use of plaintiff's works after notice of

infringement satisfied willfulness as a matter of law, the court also emphasized that defendant

was "engaged in the business of selling copyrighted works" and could "not claim ignorance as

to its legal obligations." *Id.*  Similarly, in *Getty Images II*, this District found that defendants'

actions were willful and worthy of maximum statutory damages where, as here, the defendants

knew their conduct was infringing and they nevertheless continued their infringement.  2014

WL 1116775, at *4; *see also Klauber Bros., Inc. v. Kylie Shop, Inc*., 2020 WL 8474583, at *3

(C.D. Cal. 2020) (awarding maximum statutory damages where evidence showed defendant's

"knowledge of both the Subject Design and [Plaintiff's] ownership of it"); *Unicolors, Inc. v.

Joy 153, Inc*., 2016 WL 3462128, at *8 (C.D. Cal. 2016) (awarding maximum statutory

damages as "both appropriate and warranted in light of Ninth Circuit and Central District

precedent," noting "Defendant's failure to participate in this action renders Plaintiff unable to

determine actual damages and profit disgorgement"); *To v. Nguyen*, 2008 WL 11340345, at *3

(C.D. Cal. 2008) (awarding "$150,000 in statutory damages for … willful copyright

infringement of each of the 21 volumes of Paris By Night that were posted on Vietprofile.com,

for a total of $3,150,000" and noting this was an "appropriate award to compensate [Plaintiff]

and deter future violations").  As in all these cases, Defendants' flagrant and widespread

infringement, coupled with their coordinated acts of deception, continued infringement, and

disregard for United States copyright laws, warrant imposing the maximum statutory damages.

      Such an award also serves the important purpose of deterring similar conduct from both

Defendants and other ebook pirates. *See Philip Morris USA, Inc. v. Castworld Prods, Inc.*, 219

F.R.D. 494, 501 (C.D. Cal. 2003) (citing *F.W. Woolworth*, 344 U.S. at 233) ( "The Supreme

Court has held deterrence of future infringement is an important factor in determining damages

under the Copyright Act ….").  While injunctive relief is both appropriate and necessary (as

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

described below), it alone is inadequate to compensate Plaintiffs for the substantial harms inflicted by Defendants or to deter Defendants from continuing to perpetrate their international, illegal schemes that reaped illicit profits from others' hard work. Only a significant monetary judgment will deter Defendants' conduct and dissuade them—or interested bad actors like them—from repeating similar schemes.

### D.    Plaintiffs Are Entitled to Permanent Injunctive Relief.

In addition to statutory damages, Plaintiffs seek to permanently enjoin Defendants from further infringing Plaintiffs' rights by simply recreating the scheme under a different moniker. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). The Copyright Act specifically provides that a court may "grant temporary and final injunctions on such terms at it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Because all four factors are satisfied, the Court should convert its preliminary injunction into a permanent injunction, as set forth in the accompanying proposed order.

### 1.    Plaintiffs Suffered Irreparable Harm.

As previously found by this Court, Plaintiffs "have and are suffering irreparable injury" by virtue of Defendants' infringement. Dkt. 15 at 3. Irreparable harms can include intangible damages like loss of prospective customers and goodwill to a business. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

compensable and is therefore an appropriate basis for injunctive relief."); *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) (copyright infringement may specifically constitute irreparable harm "in the loss of control of a business's reputation" and in the "loss of trade and … goodwill"), *aff'd*, 348 F. App'x 288 (9th Cir. 2009). It can also be disruption of an exclusive distribution scheme. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir. 1997).

Here, as established by the admitted allegations and supporting evidence, Defendants' illegal distribution of the works has disrupted Plaintiffs' distribution channels and business relationships; caused them to lose prospective customers and future sales opportunities; and harmed their brands, reputations, and goodwill from customers who receive Defendants' inferior ebook copies. *See* Compl. ¶¶ 6, 50, 52; Dkt. 3 ¶ 6. Plaintiffs also suffer unquantifiable reputational and business harm from the loss of control over the determination of the fair market value of the works. Accordingly, the Court should find that Plaintiffs suffered, and will continue to suffer, irreparable harm without the requested injunctive relief. *See Getty Images II*, 2014 WL 1116775, at *6 (finding irreparable harm because Getty faced potential loss of customers, goodwill, and reputation from defendant's unlicensed use of Getty's images).

## 2. Monetary Damages Alone Are Inadequate.

As previously discussed, Defendants continued their willful violation of Plaintiffs' rights even after they had notice of this case and the substantial monetary claims against them, proving that monetary damages are inadequate. *See* Goldmark Decl. ¶¶ 11-14 & Exs. K-L.

"For the second factor, the plaintiff must show that 'remedies available at law, such as monetary damages, are inadequate to compensate for the injury.'" *Getty Images II*, 2014 WL 1116775, at *6 (quoting *eBay*, 547 U.S. at 391). A defendant's failure to appear suggests that their "infringing activities will not cease absent judicial intervention." *Warner Bros. Home Entm't Inc. v. Jimenez*, 2013 WL 3397672, at *7 (C.D. Cal. 2013); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.").

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Here, the pervasiveness of Defendants' misconduct and their pattern of hiding their identities and connection to their illicit piracy sites strongly suggest that Defendants are likely to continue their highly profitable sales of illegally copied works on new mirror sites if not restrained by this Court. Indeed, after Plaintiffs filed suit, Defendants attempted to obscure their actions and identities with respect to the websites named in the Complaint, Goldmark Decl. ¶¶ 8-10, while continuing to operate and display unauthorized copies of Plaintiffs' works on additional websites that Plaintiffs uncovered through discovery, *see id.* ¶ 12 (detailing SmashBook sites). Given Defendants' refusal to appear to defend these proceedings, and the potential need to take down any future iterations of the Kiss Library scheme—such as the related piracy sites uncovered through third-party discovery, *see id.* ¶ 11—injunctive relief is necessary to prevent Defendants from continuing or otherwise propagating their copyright piracy. *See Getty Images II*, 2014 WL 1116775, at *6 (monetary damages inadequate where plaintiff is unlikely to collect judgment and likely to need additional suits to preserve rights).

### 3. The Balance of Equities Favors a Permanent Injunction.

Defendants have no legitimate interest in continuing to profit from their illegal sales of Plaintiffs' works. *Disney*, 869 F.3d at 866-67; *see Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (that injunction might drive defendant out of business was irrelevant when defendant's business rests on infringing plaintiff's intellectual property); *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). Meanwhile, without an injunction, Plaintiffs will continue to suffer irreparable harm from Defendants' willful misconduct, effectively losing control over their digital book distributions and intellectual property with little other recourse. *See supra* Section III.D.1-2. Because the very foundation of Defendants' business is built on theft of intellectual property and deception, the balance of harms weighs strongly in Plaintiffs' favor. *See, e.g.*, *Wecosign, Inc. v. IFG Holdings, Inc.*, 845

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("[W]ithout an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

### 4. The Public Interest Would Be Served by a Permanent Injunction.

"Courts usually find that 'the public interest is served when the rights of copyright holders are protected against acts likely constituting infringement,'" *Getty Images II*, 2014 WL 1116775, at *7 (citation omitted), as the public has a strong interest in not being confused or deceived by fraudulent and infringing conduct, *see Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009). Defendants have not only caused loss of consumer confidence in the quality of Plaintiffs' works, but they have also repudiated this Court's authority over copyright enforcement and "sneer[ed] in the face of copyright owners and copyright laws." *See Tu v. TAD Sys. Tech. Inc.*, 2009 WL 2905780, at *3 (E.D.N.Y. 2009) (citation & internal quotation marks omitted). Accordingly, a permanent injunction keeping Defendants from continuing to perpetrate such a harmful scheme weighs heavily in the public interest.

## IV. CONCLUSION

As highlighted above, the Court should grant Plaintiffs' motion for default judgment against Defendants Kiss Library, Vynnychenko, and Besshapochny based on their willful infringement of Plaintiffs' protected literary works and continued attempts to avoid justice for that misconduct. *See* Fed. R. Civ. P. 55(b); LCR 55(b). Because Plaintiffs have also presented significant evidence regarding the recalcitrant and severe nature of the infringement, and the irreparable harm that must be deterred, they respectfully request that the Court (1) award $7.8 million in statutory damages and (2) issue a permanent injunction, as set forth in the proposed Order submitted with this Motion.

///

///

///

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

DATED this 8th day of November, 2021.

DAVIS WRIGHT TREMAINE LLP

By  *s/ John A. Goldmark*
     John A. Goldmark, WSBA #40980
     Caesar Kalinowski IV, WSBA #52650
     920 Fifth Avenue, Suite 3300
     Seattle, WA 98104
     Telephone: 206-622-3150
     Email: JohnGoldmark@dwt.com
           CaesarKalinowski@dwt.com

     Elizabeth A. McNamara (*pro hac vice*)
     1251 Avenue of the Americas, 21st Floor
     New York, NY 10020
     Telephone: 212-489-8230
     Email: LizMcNamara@dwt.com

     *Attorneys for Amazon Content Services LLC, Penguin Random House LLC, Lee Child, Sylvia Day, John Grisham, C.J. Lyons, Doug Preston, Jim Rasenberger, T.J. Stiles, R.L. Stine, Monique Truong, Scott Turow, Nicholas Weinstock, and Stuart Woods*

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax