UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON CONTENT SERVICES LLC, et al., | CASE NO. C20-1048 MJP |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |
| v. | |
| KISS LIBRARY, RODION VYNNYCHENKO, ARTEM BESSHAPOCHNY, JACK BROWN, DOES 1-10, | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Default Judgment. (Dkt. No. 39). Having reviewed the Motion, all supporting materials, and the relevant portions of the record, the Court GRANTS the Motion and ENTERS DEFAULT JUDGMENT against Defendants Kiss Library, Rodion Vynnychenko, and Artem Besshapochny ("Defendants") and ENTERS a PERMANENT INJUNCTION against Defendants on the terms set forth in this Order. This Order does not apply to Jack Brown because Plaintiffs voluntarily dismissed their claims against him. (See Dkt. No. 37.)

1

**BACKGROUND**

2

Plaintiffs are a group of publishers and authors who allege that Defendants illegally

3

copied, distributed, and sold Plaintiffs' copyrighted literary works. (Complaint ¶ 1 (Dkt. No. 1).)

4

The authors include Lee Child, Sylvia Day, John Grisham, C.J. Lyons, Doug Preston, Jim

5

Rasenberger, T.J. Stiles, R.L. Stine, Monique Truong, Scott Turow, Nicholas Weinstock, and

6

Stuart Woods ("Authors"). (Id.) The publishers are Penguin Random House LLC and Amazon

7

Content Services LLC ("Publishers"). (Id.) Plaintiffs sued Defendants to recover damages and

8

put an end to the illegal trade of their literary works.

9

Defendants Vynnychenko and Besshapochny are both Ukrainian nationals who created

10

and operated Kiss Library through a variety of websites to offer pirated copies of the Authors'

11

works without paying the Authors or Publishers royalties for the sales. (Id. ¶¶ 5-7, 23-25.)

12

Defendants used a series of ruses to hide their identities and avoid both detection and

13

accountability. (Id. ¶¶ 36, 38, 46-49; Declaration of John Goldmark ¶¶ 5-13 (Dkt. No. 40).)

14

Plaintiffs have identified at least 52 different copyrighted literary works that Defendants illegally

15

distributed and sold through their websites. (Id. ¶¶ 41-42; Goldmark Decl. ¶¶ 2-3.) Plaintiffs

16

have suffered economic losses through lost royalties and claim to have suffered non-economic

17

damages in the form of lost customers, damaged goodwill, and disruption of distribution

18

licenses. (Compl. ¶¶ 50-52.)

19

Defendants have not participated in this lawsuit and have taken efforts to avoid

20

accountability. Despite being given a notice and opportunity to be heard, Defendants did not

21

respond to Plaintiffs' Motion for Temporary Restraining Order. (Dkt. Nos. 10, 13-14.) The Court

22

then converted the TRO into a motion for preliminary injunction, which it granted. (Dkt. No. 15.)

23

Defendant Vynnychenko twice refused to accept service and ultimately failed to appear at a

24

1   confirmation of service proceeding required under Ukrainian law. (See Status Report (Dkt. No.

2   31); Declaration of Artem Krykun-Trush ISO Status Report ¶ 4 (Dkt. No. 32).) Ultimately

3   Defendants were properly served in compliance with the Court's Order on Service, the Hague

4   Convention, and local Ukrainian law. (Dkt. No. 10; Goldmark Decl. ¶¶ 14-16; Dkt. No. 31 at 2.)

5   After the Court issued the Preliminary Injunction, Plaintiffs and their Ukrainian investigator

6   uncovered further efforts Defendants have undertaken to hide their identities and destroy

7   evidence after the lawsuit was filed. (Goldmark Decl. ¶¶ 5-13.) In light of Defendants' failure to

8   appear and defend against Plaintiffs' claims, Plaintiffs moved for and obtained default against

9   Defendants. They now seek default judgment and a permanent injunction.

10                                             **ANALYSIS**

11  **A.    Legal Standard**

12          After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b). This

13  determination is discretionary. See Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392

14  (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the

15  entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits

16  of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

17  stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the

18  default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of

19  Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th

20  Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the

21  complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906

22  (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make

23  detailed findings of fact." Id.

24

**B.    Jurisdiction**

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction.

There is little doubt that the Court has subject matter jurisdiction over Plaintiffs' claims. Plaintiffs brings claims under the Copyright Act, 17 U.S.C. § 501, which fall within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

The Court further considers personal jurisdiction. Personal jurisdiction over a nonresident defendant is "tested by a two-part analysis." Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the Court inquires whether the "exercise of jurisdiction . . . satisf[ies] the requirements of the applicable state long-arm statute," and, second, the Court determines whether asserting personal jurisdiction "comport[s] with due process." Id. Where there is no applicable federal statute regarding personal jurisdiction, court looks instead to the law of the forum state. See Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); Fed. R. Civ. P. 4(k)(1)(A). Here, the Court considers Washington law, whose "long-arm statute extends jurisdiction to the limit of federal due process." Chan, 39 F.3d at 1405. This collapses the two-part inquiry into one question—does personal jurisdiction comply with federal due process. See id. Federal due process requires that defendants "'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A nonresident defendant has sufficient minimum contacts when: (1) the defendant "purposefully direct[s] his activities" at the forum; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of

1   jurisdiction is "reasonable." <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1076 (9th

2   Cir. 2011) (citation & internal quotation marks omitted).

3          The Court finds that all three elements of due process are satisfied. First, Defendants

4   purposefully directed their piracy scheme at Washington and its residents by targeting works

5   they knew or should have known were published by Plaintiff Amazon, which is headquartered in

6   Seattle, Washington. Defendants advertised and distributed the copyrighted works at issue to

7   Washington consumers in violation of the Copyright Act, duping consumers and interfering with

8   the Author Plaintiffs' licensing relationship with Plaintiff Amazon who suffered a loss of sales in

9   Washington. (<u>See</u> Compl. ¶¶ 29, 50, 52.) This satisfies the purposeful direction prong. <u>See</u>

10  <u>CollegeSource</u>, 653 F.3d at 1077.  Second, Plaintiffs' copyright infringement arise from and

11  relate to Defendants' forum-related activities, given that Defendants knowingly and intentionally

12  infringed on a Washington-based company's copyrighted works and compete with the company

13  in Washington. Third, Defendants have not met their burden to show that the exercise of

14  personal jurisdiction is unreasonable. <u>See</u> <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223

15  F.3d 1082, 1088 (9th Cir. 2000) (noting that defendants bear the burden on this issue). The Court

16  therefore finds that it has personal jurisdiction over the Defendants.

17  **C.    <u>Eitel</u> Factors Favor Default Judgment**

18         The seven <u>Eitel</u> factors weigh in favor of entry of default judgment in Plaintiffs' favor.

19         **1.    Factor One: Prejudice to Plaintiffs**

20         Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted

21  to litigate this case and vindicate their rights under the Copyright Act against Defendants. But

22  Defendants have failed to appear or participate in this litigation. Plaintiffs face prejudice by not

23

24

being able to obtain complete relief on their claims against Defendants without a default

judgment. This factor weighs in favor of granting default judgment.

2.    **Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of Complaint**

Plaintiffs have demonstrated the merit of their claims and the sufficiency of their

allegations against Defendants. "To establish direct copyright infringement, the [plaintiff] must

(1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged

infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. §

106." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (citation and

quotation omitted). Plaintiffs' well-pleaded allegations, which the Court accepts as true given

Defendants' default, show that Plaintiffs own the 52 copyrights literary works at issue and that

Defendants willfully copied, displayed, and distributed these works without a license in violation

of 17 U.S.C. § 106. (See Compl. ¶¶ 8, 11-22, 32, 40-42, 54, 56; Goldmark Decl. ¶ 3.) This

satisfies these two Eitel factors, which weigh in favor of entry of default judgment.

3.    **Factor Four: Sum of Money at Stake**

The amount Plaintiffs seek to be entered in the default judgment gives the Court some

pause. Plaintiffs seek $7,800,000 in statutory damages, which is a substantial award and the

statutory maximum for each of the fifty-two infringed works. See 17 U.S.C. § 504(c)(2). But

given the extent of the piracy scheme, Defendants' efforts to fight or participate in this lawsuit,

and the seriousness of the misconduct, the Court finds that the requested damages are reasonable.

The Court finds that the amount requested does not disfavor entry of default judgment. The

Court discusses the specific amount of damages requested and awarded in Section D, below.

1

  **4. Factor Five: Possibility of Dispute of Material Facts**

2

  The Court finds little likelihood of a dispute of material fact to remain. Consistent with

3

Ninth Circuit law, the Court deems the well-pleaded claims to be true. <u>Fair Housing</u>, 285 F.3d at

4

906. Plaintiffs have also provided evidence to further corroborate the complaint's allegations.

5

(<u>See</u>, <u>e.g.</u>, Compl. Exs A-D; Goldmark Decl. ¶¶ 2-13.) This factor weighs in favor of entry of

6

default judgment.

7

  **5. Factor Six: Whether Default is Due to Excusable Neglect**

8

  The Court finds that the default was not entered due to excusable neglect. Defendants

9

were served with the complaint and summons in accordance with the Court's Order on Service,

10

the Hague Convention, and Ukrainian law. (<u>See</u> Dkt. Nos. 10, 34.) Despite being given a

11

reasonable opportunity to appear, Defendants chose not to defend against the claims Plaintiffs

12

have made. There is no evidence that Defendants' failure to oppose default is due to excusable

13

neglect and this factor favors entry of default judgment.

14

  **6. Factor Seven; Strong Policy in Favor of Decision on the Merits**

15

  The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

16

on the merits. But Defendants decision not to appear in this case vitiates against this policy. This

17

factor weighs in favor of entry of default judgment.

18

      *  *  *

19

  Having considered and balanced the <u>Eitel</u> factors, the Court finds that entry of default

20

judgment is proper.

21

22

23

24

**D.    Damages**

Plaintiffs seek an award of $150,000 for each of the 52 works Defendants illegally sold and distributed, which is the statutory maximum for willful copyright infringement. See 17 U.S.C. § 504(c)(2). The Court finds this request appropriate.

To obtain statutory damages for willful infringement, Plaintiffs "must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." Unicolors, Inc. v. Urb. Outfitters, Inc., 853 F.3d 980, 991 (9th Cir. 2017) (citation and quotation omitted). There is a rebuttable presumption that the infringement is willful "if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority[.]" 17 U.S.C. § 504(c)(3)(A).

Here, Plaintiffs' complaint contains substantial allegations—deemed true—that Defendants knew the works were copyrights and took efforts to disguise from customers that the copyrighted works were illegally being distributed and sold. (Compl. ¶¶ 36-38, 44-47.) And Plaintiffs have provided further evidence that Defendants engaged in substantial efforts to hide the illegal nature of their conduct. (See Goldmark Decl. ¶¶ 5-13.) Plaintiffs also allege that Defendants provided false information to a domain name registrar in setting up some of the many websites at issue, which also satisfies the rebuttable presumption of willful infringement. See 17 U.S.C. § 504(c)(3)(A). The Court therefore finds that Plaintiffs have shown Defendants willfully violated the Copyright Act.

The Court has wide discretion in determining the amount of statutory damages to be awarded within the ranges provided by 17 U.S.C. § 504(c)(1)-(2). See Harris v. Emus Records

1   Corp., 734 F.2d 1329, 1335 (9th Cir. 1984). The court is guided by "what is just in the particular

2   case, considering the nature of the copyright, the circumstances of the infringement and the like."

3   Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (citation and

4   quotation omitted). And "[b]ecause awards of statutory damages serve both compensatory and

5   punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate

6   evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant." L.A.

7   News Serv. v. Reuters Television Intern., Ltd., 149 F.3d 987, 996 (9th Cir. 1998) (citation and

8   quotation omitted). This is particularly true when the evidence of profit is within the infringers'

9   control and they have not appeared in the action. In the absence of a uniform set of criteria to

10  determine statutory damages for willful copyright infringement, courts generally consider four

11  factors: "(1) the infringer's profits and expenses saved because of the infringement; (2) the

12  plaintiff's lost revenues; (3) the strong public interest in ensuring the integrity of copyright laws;

13  and (4) whether the infringer acted willfully." Getty Images (U.S.), Inc. v. Virtual Clinics, No.

14  C13-0626JLR, 2014 WL 1116775, at *2 (W.D. Wash. Mar. 20, 2014). Generally, the first two

15  factors are given less weight than the final two. Id.

16          The Court finds that all four factors favor awarding the maximum statutory amount. The

17  first two factors weigh somewhat in favor of the statutory maximum. While there is no specific

18  evidence of Defendants' profits or Plaintiffs' lost revenues, that fact is not neither surprising nor

19  dispositive since the data is solely within the absent Defendants' control. See Getty, 2014 WL

20  1116775, at *2. As to the third factor, the Court recognizes that public's "compelling interest in

21  protecting copyright owners' marketable rights to their work and the economic incentive to

22  continue creating" literary works. Disney, 869 F.3d at 867 (citation and quotation omitted). And

23  as to the fourth factor, there is substantial evidence that Defendants have acted willfully. On

24

balance, these four factors support an award of the maximum statutory damages. The Court

therefore AWARDS Plaintiffs' the maximum statutory amount of $150,000 for each of the

following 52 copyrighted works ("Plaintiff Works") as follows:

(a) $150,000 for willful infringement of *Abducted*;[1]
(b) $150,000 for willful infringement of *Afterburn*;[2]
(c) $150,000 for willful infringement of *A Dark Mind*;[3]
(d) $150,000 for willful infringement of *As Long As She Needs Me: A Novel*;[4]
(e) $150,000 for willful infringement of *Blood on the Tracks*;[5]
(f) $150,000 for willful infringement of *Fight Dirty*;[6]
(g) $150,000 for willful infringement of *Jesse James: Last Rebel of the Civil War*;[7]
(h) $150,000 for willful infringement of *My Sister's Grave*;[8]
(i) $150,000 for willful infringement of *Persuader*;[9]
(j) $150,000 for willful infringement of *Red Rain: A Novel*;[10]
(k) $150,000 for willful infringement of *Short Straw*;[11]
(l) $150,000 for willful infringement of *The Book of Salt*;[12]
(m) $150,000 for willful infringement of *The Brilliant Disaster: JFK, Castro, and America's Doomed Invasion of Cuba's Bay of Pigs*;[13]
(n) $150,000 for willful infringement of *The Burden of Proof*;[14]
(o) $150,000 for willful infringement of *The Litigators*;[15]
(p) $150,000 for willful infringement of *Tyrannosaur Canyon*;[16]

---

[1] Registration No. TX0007670441.

[2] Registration No. TX0008280509.

[3] Registration No. TX0007728631.

[4] Registration No. TX0005380194.

[5] Registration No. TX0008334746.

[6] Registration No. TX0008076233.

[7] Registration No. TX0005703845.

[8] Registration No. TX0008009209.

[9] Registration No. TX0006919613.

[10] Registration No. TX0007603027.

[11] Registration No. TX0006465649.

[12] Registration No. TX0005745355.

[13] Registration No. TX0007373794.

[14] Registration No. TX0002844794.

[15] Registration No. TX0007494080.

[16] Registration No. TX0006206315.

(q)   $150,000 for willful infringement of *You Are Not Small*;[17]
(r)   $150,000 for willful infringement of *Custer's Trials: A Life on the Frontier of a New America*;[18]
(s)   $150,000 for willful infringement of *The First Tycoon: The Epic Life of Cornelius Vanderbilt*;[19]
(t)   $150,000 for willful infringement of *Hollow Bones*;[20]
(u)   $150,000 for willful infringement of *Lucidity*;[21]
(v)   $150,000 for willful infringement of *One L: The Turbulent True Story of a First Year at Harvard Law School*;[22]
(w)   $150,000 for willful infringement of *Carnal Curiosity*;[23]
(x)   $150,000 for willful infringement of *Chiefs: A Novel*;[24]
(y)   $150,000 for willful infringement of *Collateral Damage*;[25]
(z)   $150,000 for willful infringement of *Cut and Thrust*;[26]
(aa)  $150,000 for willful infringement of *D.C. Dead*;[27]
(bb)  $150,000 for willful infringement of *Foreign Affairs*;[28]
(cc)  $150,000 for willful infringement of *Hothouse Orchid*;[29]
(dd)  $150,000 for willful infringement of *Insatiable Appetites*;[30]
(ee)  $150,000 for willful infringement of *Iron Orchid*;[31]
(ff)  $150,000 for willful infringement of *Orchid Beach*;[32]
(gg)  $150,000 for willful infringement of *Orchid Blues*,[33]
(hh)  $150,000 for willful infringement of *Palindrome*;[34]

---

[17] Registration Nos. TX0007970793; TX0007970795.

[18] Registration No. TX0008229466.

[19] Registration No. TX0006942463.

[20] Registration No. TX0007754956.

[21] Registration No. TX0007610805.

[22] Registration No. TX0002573137.

[23] Registration No. TX0007909225.

[24] Registration No. TX0000719822.

[25] Registration No. TX0007684917.

[26] Registration No. TX0007943843.

[27] Registration No. TX0007478430.

[28] Registration No. TX0008233410.

[29] Registration No. TX0007056077.

[30] Registration No. TX0008027684.

[31] Registration No. TX0006295537.

[32] Registration No. TX0004894963.

[33] Registration No. TX0005465649.

[34] Registration No. TX0003038167.

(ii)   $150,000 for willful infringement of *Santa Fe Dead*;[35]
(jj)   $150,000 for willful infringement of *Santa Fe Edge*;[36]
(kk)  $150,000 for willful infringement of *Santa Fe Rules*;[37]
(ll)   $150,000 for willful infringement of *Shoot Him If He Runs*;[38]
(mm) $150,000 for willful infringement of *Two Dollar Bill*;[39]
(nn)  $150,000 for willful infringement of *Unintended Consequences*;[40]
(oo)  $150,000 for willful infringement of *Unnatural Acts*;[41]
(pp)  $150,000 for willful infringement of *Swimming to Catalina*;[42]
(qq)  $150,000 for willful infringement of *Dead eyes*;[43]
(rr)   $150,000 for willful infringement of *Dead in the Water: A Novel*;[44]
(ss)   $150,000 for willful infringement of *Bitter in the Mouth*;[45]
(tt)   $150,000 for willful infringement of *Gray Mountain: A Novel*;[46]
(uu)  $150,000 for willful infringement of *Rogue Lawyer*;[47]
(vv)  $150,000 for willful infringement of *Sycamore Row*;[48]
(ww) $150,000 for willful infringement of *Theodore Boone: The Abduction*;[49]
(xx)  $150,000 for willful infringement of *Theodore Boone: The Accused*;[50]
(yy)  $150,000 for willful infringement of *Theodore Boone: The Fugitive*;[51]   and
(zz)  $150,000 for willful infringement of *Jennie*.[52]

---

[35] Registration No. TX0007172693.

[36] Registration No. TX0007328233.

[37] Registration No. TX0003367425.

[38] Registration No. TX0006903331.

[39] Registration No. TX0006164181.

[40] Registration No. TX0007739500.

[41] Registration No. TX0007529029.

[42] Registration No. TX0004751854.

[43] Registration No. TX0003864784.

[44] Registration No. TX0004579095.

[45] Registration No. TX0007299541.

[46] Registration No. TX0007964170.

[47] Registration No. TX0008229453.

[48] Registration Nos. TX0007791381; TX0007963390.

[49] Registration No. TX0007413142.

[50] Registration No. TX0007558149.

[51] Registration No. TX0008293865.

[52] Registration No. TX0003921292.

1    The Court directs the Clerk to enter Judgment in Plaintiffs' favor in the amount of

2    $7,800,000 against the Defendants, jointly and severally.

3    **E.      Injunctive Relief**

4          The Court finds it appropriate to enter a permanent injunction against Defendants.

5          "As a general rule, a permanent injunction will be granted when liability has been

6    established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer,

7    Inc., 991 F.2d 511, 520 (9th Cir. 1993). And under the Copyright Act the Court may "grant

8    temporary and final injunctions on such terms at it may deem reasonable to prevent or restrain

9    infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking permanent injunctive relief

10   must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at

11   law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

12   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

13   warranted; and (4) that the public interest would not be disserved by a permanent injunction."

14   eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

15         The Court finds that all four eBay factors favor entry of a permanent injunction. First,

16   based on the admitted allegations in the Complaint, Defendants' copyright infringement has

17   caused irreparable harm to Plaintiffs' goodwill, reputation, and distribution efforts particularly

18   by disrupting Plaintiffs' control over the sale of their works. Second, Plaintiffs have shown that

19   monetary damages alone will not prevent Defendants from engaging in further abusive conduct.

20   Given Defendants' decision not to appear in this case and their pattern of deception and evasion,

21   there can be no assurances that Defendants will no longer engage in the conduct at issue in this

22   case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities

23   favor Plaintiffs, who merely seek to enjoin Defendants from engaging in illegal conduct that

24

benefits only Defendants. This favors Plaintiffs and the requested injunction. Fourth, an injunction prohibiting Defendants from engaging in further conduct that misleads and defrauds consumers and infringes on the rights of copyright holders will serve the public interest. The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION against Defendants Kiss Library, Rodion Vynnychenko, and Artem Besshapochny, and their agents,[53] servants, employees, confederates, and any persons acting in concert or participation with them and hereby permanently ENJOINS AND RESTRAINS them from:

    (a)    Directly infringing Plaintiffs' works by reproducing, displaying, distributing, offering for sale, or selling Plaintiffs' Works;

    (b)    Inducing, causing, or materially contributing to the infringement of Plaintiffs' Works;

    (c)    Moving, destroying, or otherwise disposing of any items, merchandise, assets, or other documents related to Defendants' reproduction, distribution, or sale of Plaintiffs' Works on any of Defendants' Websites,[54] including Defendants' profits linked to sales of copyrighted works through their associated websites or operations;

    (d)    Removing, destroying or otherwise disposing of any computer files, electronic files, business records, or documents relating to Defendants' websites, assets, or

---

[53] Defendants' agents expressly include any person operating the email addresses roddiku@gmail.com, sofleadecen1987@mail.ru, kmytz@yandex.ru, redoxyzo@gmail.com, jjpetruninas@gmail.com, robert.teifeld@gmail.com, ikmytz@gmail.com, hellodorld@protonmail.com, nyakambinnickson@gmail.com, ravawebsite@gmail.com, tema@xpdf.bid, hgurm80@gmail.com, amankwavictoria11@gmail.com, besshapochnyy@mail.ru, and dmitriy.chernyay@gmail.com, in furtherance of the scheme.

[54] Defendants' associated websites include Kisslibrary.com, Kisslibraryemails.com, Kisslibrary.net, Kissly.net, Wtffastspring.bid, Libly.net, Cheap-library.com, Books.coffee, Getebooks.net, Booksgreatchoice.com, Maximumbook.org, Bsebooks.com, Bookspc.com, Crucialbooks.com, Osebooks.com, Wordered.com, Thekissly.net, Kisslibraryemails.net, Quabook.com, Luckybooks.online, KissAnime.com, Torrentsmoviesfree.com, KissAnime.ru, KissManga.com, Xpdf.bid, Bookpdfs.com, 2pdfs.com, Smashbook.site, Cybook.club, Oregano.pro, Dexcom.pro, Lumeo.pro, Keyhunter.pro, Zenlibrary.top, and Lumintu.club.

operations, which relate in any way to the reproduction, distribution, or sale of Plaintiffs' copyrighted Works;

(e)      Registering, maintaining, servicing, hosting, or using any website domains or mobile application programs in furtherance of a scheme to infringe Plaintiffs' Works or other copyrighted works; and

(f)      Knowingly and materially assisting any other person or business entity in engaging in or performing any of the activities listed above.

The Court shall retain jurisdiction over this case for the purpose of enforcing this Order and Permanent Injunction.

**F.      Overlength Motion**

Plaintiffs' Motion of 24 pages exceeds the 6-page limit set by the Local Rules. See Local Rule 7(e)(1). Although Plaintiffs failed to move for relief from the six-page limit, the Court accepts the Motion and has considered its full content. The Court reminds Plaintiffs to carefully review the Local Rules to ensure that any future filings comply with the page limits.

**CONCLUSION**

The Court finds that Plaintiffs are entitled to an entry of default judgment and permanent injunction in their favor. The Court therefore: (1) GRANTS Plaintiffs' Motion; (2) ENTERS DEFAULT JUDGMENT against Defendants in Plaintiffs' favor; (3) AWARDS Plaintiffs $7,800,000 in statutory damages against Defendants; and (4) ENTERS a PERMANENT INJUNCTION against Defendants and their agents, etc. on the terms set forth above.

The Court directs the Clerk to enter Judgment in Plaintiffs' favor in the amount of $7,800,000 against the Defendants, jointly and severally. The Court further directs the Clerk to return to Plaintiffs the bond posted to secure the Preliminary Injunction.

The Court directs Plaintiffs' counsel to serve a copy of this Order and Default Judgment on Defendants at the last email or physical address(es) they received service. And the Clerk is ordered to provide copies of this Order to all counsel.

Dated December 17, 2021.

Marsha J. Pechman
United States Senior District Judge